**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**SALAH SHAKIR,**

     **Plaintiff,**

**v.**

**BOARD OF TRUSTEES OF
REND LAKE COLLEGE, et al.,**

     **Defendants.**                 **Case No. 08-cv-768-DRH**


**MEMORANDUM & ORDER**


**HERNDON, Chief Judge:**


## I.  Introduction

Before the Court is a combined Motion to Dismiss Counts 4 through 6 of Plaintiff's Amended Complaint and Motion to Strike (Doc. 46), filed by defendants Board of Trustees of Rend Lake College, County of Jefferson, State of Illinois (the "College"), and Bill Simpson, Randall Crocker and Bryan Drew.  Accompanying the Motion is Defendants' supporting memorandum (Doc. 47).  Plaintiff has filed an opposing Response (Doc. 53), to which Defendants have replied (Doc. 54).  Also before the Court is a Stipulation for Dismissal (Doc. 67) between Plaintiff and defendant John Huffman, made pursuant to **FEDERAL RULE OF CIVIL PROCEDURE**

**41(a)(1)(ii)**.  As the Court will discuss herein, it finds Defendants' arguments do not warrant dismissal based on the standard tied to such motions.   Nor does Defendants' arguments warrant striking the cited allegations in Plaintiff's Amended Complaint.  Further, the Court acknowledges the Stipulation for Dismissal between Plaintiff and defendant Huffman to dismiss with prejudice Counts 2, 4 and 6 of the amended complaint against him.

## II.  <u>Background</u>

When ruling on a motion to dismiss, the Court may only accept as true the well-pleaded factual allegations of a complaint and must discount mere legal conclusions.  ***See Ashcroft v. Iqbal*, --- U.S.---, --- 129 S. Ct. 1937, 1950 (2009)**.  Accordingly, the Court will only recount allegations of Plaintiff's Amended Complaint which contain well-pleaded facts.

Plaintiff's Amended Complaint (Doc. 37) consisting of the following:

Count 1 -   a claim under Title VII for discrimination and retaliation against the College;

Count 2 -   a civil rights claim against the College, and defendants Simpson, Crocker, Drew and Huffman, pursuant to **42 U.S.C. § 1981**;

Count 3 -   a civil rights claim against the College pursuant to **42 U.S.C. § 1983**;

Count 4 -   a claim for tortious interference with a prospective contractual relationship against defendants Simpson, Crocker, Drew and Huffman;

Count 5 -   a claim for intentional infliction of emotional distress against the College and defendants Simpson, Crocker, Drew

and Huffman; and

Count 6 -   a claim for negligent infliction of emotional distress against the College and defendants Simpson, Crocker, Drew and Huffman.

Defendants, the College, Simpson, Crocker and Drew move pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** to dismiss Counts 4 through 6 of Plaintiff's Amended Complaint.

The facts are as Plaintiff alleges in his Amended Complaint (doc. 37). Plaintiff Salah Shakir is an employee of defendant Board of Trustees of Rend Lake College, County of Jefferson, State of Illinois (the "College"), currently serving as its Vice President of Information Technology (Doc. 37, ¶¶ 1 & 14). He is a Muslim individual of Iraqi national origin. He has seventeen years of college-level administrative and teaching experience and overall, twenty five years of experience in the field of information technology (*Id*. at ¶ 1). At the time at issue in this suit, defendant Bill Simpson ("Simpson") served as the Chairman of the College's Board of Trustees (the "Board") (*Id*. at ¶ 9). Defendants Randall Crocker ("Crocker") and Bryan Drew ("Drew") were also members of the Board (*Id*. at ¶¶ 10-11). Also at the time at issue in this suit, defendant John Huffman ("Huffman"), a private attorney, served as legal counsel for the College on a variety of matters (*Id*. at ¶ 12).

The Board received an anonymous letter on August 20, 2007, which accused Plaintiff of unethical behavior, specifically, for practicing his Muslim religion

and speaking Arabic during school hours (*Id.* at ¶¶ 15-16[1]).  The letter also accused Plaintiff of using his position within the College for self serving and vengeful purposes and continued to question whether his attempts to recruit foreign students violated college rules, believing his attempts were for non-educations purposes, questioning why Plaintiff hired a non-English speaking computer programmer (*Id.* at ¶ 17).  The letter's author stated that s/he would be watching the newspapers for mention of the concerns raised by the letter and further warned that s/he would contact local congressional representatives if the College failed to take action (*Id.* at ¶ 19). [2]

In response to the letter, on August 29, 2007, the College launched an investigation.  The investigation seemed to focus on Plaintiff.  Plaintiff claims the investigation was unilaterally authorized by defendants Simpson and Crocker (*Id.* at ¶ 20).  Simpson informed the local media of the investigation, but Plaintiff claims he was never informed of either the purpose or scope of the ultimate findings of the investigation (*Id.* at ¶¶ 21-22).  On October 3, 2007, defendants Drew and Huffman questioned Plaintiff for approximately two hours (*Id.* at ¶ 25).  During their investigation, Defendants received various letters and statements from certain of its employees regarding Plaintiff.  Plaintiff claims Defendants never informed him of the contents of the letters and their statements nor was he given a chance to respond to

---

[1]  The Amended Complaint also references "Exhibit A" but no exhibits were attached.

[2]  Plaintiff also alleges that the same person who wrote the first anonymous letter then sent another letter (with the first letter attached thereto) to the Board and local media, dated September 13, 2007.  The second letter allegedly complained of the Board's failure to take action against Plaintiff (*Id.* at ¶ 23).

them (*Id*. at ¶¶ 26-27).

Plaintiff further alleges that during an executive session of the Board on October 16, 2007, various members of the Board, including defendants Simpson, Crocker and Drew, attempted to convince the president of the College, Mark Kern, to terminate Plaintiff.  Kern decided not to terminate Plaintiff, but instead suggested a course of lesser punitive action (*Id*. at ¶¶ 27-29).  Defendant Simpson was quoted by the *Southern Illinoisan* newspaper on October 17, 2007 as stating that the investigation could result in "substantial organizational changes" at the College (*Id*. at ¶ 30).  Subsequent articles reported that a decision about whether to remove Plaintiff as the Vice President of Student Services was to be made subsequent to the conclusion of an internal investigation (*Id*. at ¶ 31).  Plaintiff claims several harsh reader comments to these newspaper articles attacked his character (*Id*. at ¶ 33).

Sometime on or about October 19, 2007, the College approved the removal of Plaintiff from his position as Vice President of Student Services and also placed a freeze on his salary (*Id*. at ¶ 34).  Plaintiff claims the College never informed him of the reasons behind the decision to remove him from his position or why it decided to freeze his salary (*Id*. at ¶ 36).

According to Plaintiff, he continued to be falsely portrayed in the public media.  For example, on October 25, 2007, the local evening news reported of a federal investigation regarding Plaintiff, lead by officials from Homeland Security and the FBI, spawned by an anonymous letter received by the College containing allegations of forged documents and physical attacks by administrators on employees

(*Id*. at ¶ 37).  Plaintiff believes an employee of the College contacted the Department of Homeland Security to request that an investigation be initiated.  However, Plaintiff claims he spoke with an involved FBI official who informed Plaintiff that the allegations were deemed to be without merit and therefore, officials declined to investigate (*Id*. at ¶ 38).  Plaintiff alleges that defendant Crocker knew the identity of the College employee who contacted the authorities, but never made any attempt to correct the false reports made concerning Plaintiff (*Id*. at ¶ 40).

Plaintiff further alleges that Defendants otherwise encouraged a hostile and discriminatory atmosphere at the College, listing as an example an administrator who told defendants Carlock and Huffman that she locked herself in her office out of fear for her safety.  Plaintiff further claims that Defendants granted the administrator's request for extra security at the campus daycare facility, due to her safety concerns stemming from the presence of Saudi Arabian students at the College (*Id*. at ¶ 35).

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding what he felt was discriminatory treatment by the College (*Id*. at ¶ 41).  At the December 9, 2008 Board meeting, defendant Simpson announced the fact that Plaintiff had filed an EEOC complaint.  Plaintiff alleges that on January 15, 2008, defendant Crocker told the College president, Mark Kern, that if Plaintiff would back off of his lawsuit, he could stay as long as he wanted (*Id*. at ¶ 42).  Yet, Plaintiff claims that on February 12, 2008, another Board member told Kern it would be better for Plaintiff to leave the College (*Id*. at ¶ 43).  Plaintiff wrote

a letter to the College complaining of discriminatory treatment and seeking redress – Defendants were made aware of his letter on or about March 11, 2008 (*Id.* at ¶ 45). Defendant Huffman told Kern that defendant Simpson was "extremely angry" about Plaintiff's letter (*Id.*).  Plaintiff claims defendant Huffman also told Kern that as a result, the Board might retaliate against Plaintiff (*Id.*).

Plaintiff believes Defendants treated him differently than similarly situated employees (*Id.* at ¶ 34).  For example, he alleges that on February 25, 2008, College president Kern received an anonymous letter complaining about an employee of the College, Jim Hull, who was the Vice President of Instruction (*Id.* at ¶ 44).  This letter followed a previous, undated letter Kern received about Hull.  However, Plaintiff alleges that Defendants did not investigate Hull, freeze his salary or take away some of his responsibilities, as they did to Plaintiff (*Id.*).

When Kern decided to retire from his position as president of the College, the College conducted interviews to fill the position (*Id.* at ¶ 47).  Plaintiff applied (*Id.*).  Plaintiff claims that out of the candidates interviewed, he was the most qualified (*Id.* at ¶ 49).  However, the position was initially offered to an outside candidate – a Caucasian male who was acquainted with defendants Simpson, Crocker and Drew.  That candidate declined the offer (*Id.* at ¶ 51).  The College then decided to suspend its search for a candidate (*Id.*).

The Board voted, on June 24, 2008, to reopen the position of president and appointed Charley Holstein as interim president.  Holstein was the new Vice President of Student Services, a position Plaintiff had previously held before the

Board relieved him of that responsibility (*Id*. at ¶ 52).  Holstein is also a Caucasian male (*Id*.).   The Board thereafter decided not to consider any more internal candidates for the position on July 31, 2008 (*Id*. at ¶ 54).  At the time of filing the Amended Complaint, Holstein continued to serve as interim president of the College (*Id*. at ¶ 55).  The search for a new president was suspended in September 2008, to be reopened again the following year.  Plaintiff claims he is more qualified than Holstein in that he was the most senior vice president at the College, whereas Holstein had less than a year of college-level administrative experience (*Id*. at ¶ 53).

### III.  Discussion

**A.    Stipulation For Dismissal**

The Court first addresses the Stipulation for Dismissal (Doc. 67).  Previous attempts at filing this Stipulation were found unsuccessful for procedural reasons (*see* August 20, 2009 Order striking joint motion to dismiss and stipulation of dismissal at Doc. 66).  However, reviewing the instant Stipulation, the Court finds it properly in compliance with **Rule 41(a)(1)(ii)** in that it is signed by a representative for all Parties who have appeared in this case.  As such, the Court acknowledges the stipulation, which dismisses with prejudice Counts 2, 4 and 6 of Plaintiff's Amended Complaint against defendant Huffman only.

**B.    Defendants' Motion to Dismiss**

Defendants Simpson, Crocker Drew and the College collectively move for a dismissal of Counts 4, 5 and 6 of Plaintiff's Amended Complaint, pursuant to

**Rule 12(b)(6)** (Doc. 46).  Defendants argue several grounds for dismissal.  First, Defendants argue that Counts 4 through 6 are barred by the one-year statute of limitations of the Local Governmental and Governmental Employees Tort Immunity Act.  **745 ILL. COMP. STAT. 10/8-101**.  Alternatively, Defendants further argue that Counts 4 through 6 should be dismissed due to the immunity afforded public entities and employees for discretionary acts, pursuant to sections 2-201 and 2-209 of the Local Governmental and Governmental Employees Tort Immunity Act, **745 ILL. COMP. STAT. 10/2-201, 209**.  Also in the alternative, as to Plaintiff's claim for tortious interference in Count 4, Defendants argue it should be dismissed because of Plaintiff's failure to allege that Defendants took any action towards a third party.  Regarding Plaintiff's claim for intentional infliction of emotional distress plead in Count 5, Defendants argue that it should be dismissed for Plaintiff's failure to plead the requisite elements.  Lastly, Defendants argue that Plaintiff's claim for negligent infliction of emotional distress in Count 6 is barred by the Illinois Workers' Compensation Act, and also that Plaintiff has failed to plead the requisite elements.  The Court will address each of these arguments in turn.

When ruling on a motion to dismiss for failure to state a claim under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, the Court must look to the complaint to determine whether it satisfies the threshold pleading requirements under **FEDERAL RULE OF CIVIL PROCEDURE 8.**  Rule 8 states that a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

**FED. R. CIV. P. 8(a)(2)**. The Supreme Court held that Rule 8 requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion.  ***Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)**.  In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' " by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ."  ***Id.* at 555-56 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'  ***Ashcroft v. Iqbal*, --- U.S.---, --- 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557)**.

Recently, in ***Iqbal***, the Supreme Court made clear that the federal pleading standard under Rule 8 as discussed in its ***Twombly*** opinion applies "for all civil actions."  ***Id.* at ---, 129 S. Ct. at 1953**.  ***Iqbal*** identified the "two working principles" underlying the decision in ***Twombly***: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss."  ***Id.* at ---, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555-56)**.  In short, a court should only assume to be true a complaint's well-pleaded factual allegations, and not its mere legal conclusions, when determining whether such allegations plausibly give rise to relief.

*Id.* at ---, 129 S. Ct. at 1950.

> **1.    Whether Counts 4, 5 & 6 are Barred by the Statute of Limitations of the Illinois Tort Immunity Act**

First, the Court notes that in Plaintiff's Response, he agrees to the dismissal of Count 6 of his Amended Complaint, which alleges a cause of action for negligent infliction of emotional distress (Doc. 53, p. 12).  As both sides are in agreement, the Court will deemed Count 6 dismissed and will omit it from any further analysis herein.

Defendants Simpson, Crocker, Drew and the College (hereinafter "Defendants") move for a dismissal of Counts 4 and 5 of Plaintiff's Amended Complaint, asserting that these claims are barred by the one-year statute of limitations found within the Local Governmental and Governmental Employees Tort Immunity Act (the "Act").  **745 ILL. COMP. STAT. 10/8-101**.  They further assert that because Counts 4 and 5 sound in tort and because Defendants are all either public bodies or public employees, the Act and its statute of limitations therefore applies. The limitations provision of the Act states:

> No civil action other than an action described in subsection (b) may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.

**745 ILL. COMP. STAT. 10/8-101**.

Plaintiff initially filed his Complaint on November 3, 2008.  Therefore, applying the one-year limitations period, Defendants deduce that any alleged tortious

action must have occurred on or after November 3, 2007 to be considered timely and claims arising from alleged tortious actions occurring *before* November 3, 2007 are thus time-barred (Doc. 47, p. 6). Continuing, Defendants assert that all of the alleged tortious actions against Plaintiff, as plead in his Amended Complaint, occurred before November 3, 2007, with the exception of Plaintiff's allegations regarding the posting of the position for president of the College and the subsequent refusal to offer the position to Plaintiff. Defendants anticipate Plaintiff will argue that the failure to offer him the position served as a means of interfering with his prospective economic advantage. However, Defendants believe Plaintiff's cause of action for interference with a prospective advantage, as plead in Count 4, accrued at the latest on October 19, 2007, when he was removed from his position as Vice President of Student Services and his salary was frozen. Defendants proffer that the fact Plaintiff was subsequently not offered the position as president of the College only serves to increase the amount of his alleged damages (*Id*. at 7). Conversely, in his Response, Plaintiff does not contest the applicability of the Act's one-year statute of limitation to his claims, but argues that Counts 4 and 5 are not time-barred because Defendants' behavior constituted one continual harm (Doc. 53, p. 2).

Generally, a cause of action will accrue "when the interest at issue is invaded." ***Pavlik v. Kornhaber*, 761 N.E.2d 175, 186 (Ill. App. Ct. 2001) (citing *Hyon Waste Mgt. Serv., Inc. v. City of Chicago*, 574 N.E.2d 129, 132 (Ill. App. Ct. 1991))**. Yet, the statute of limitations will not begin to run until the date of the

last injury or when the tortious acts cease, if the tort involves a series of continuing violations.  *Id.* **at 186-87 (citations omitted)**.  Thus, the defendant's alleged wrongful conduct is viewed as a continuous whole.  In other words, "'a continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation.'" *Id.* **at 187 (citing *Hyon*, 574 N.E.2d at 132)**.

Plaintiff argues that contrary to Defendants' assertion that the only action occurring post-November 3, 2007 was the College's refusal to offer Plaintiff the position of president, there were other subsequent tortious actions supporting his "continuing violation" theory (Doc. 53, pp. 2-3).  In particular, Plaintiff lists the following:

> the reduction in Plaintiff's pay in January of 2008 and subsequent months, the College's refusal to grant Plaintiff expected pay raises and promotions in 2008, communications amongst the administration in January and February of 2008 regarding the removal of Plaintiff from the College, the March 2008 threat that the Board of Trustees . . . would "go after" Plaintiff in retaliation for his filing of an EEOC charge . . . .

(*Id.*, citing Doc. 37, ¶¶ 34, 42, 43, 45, 47-55, 71.)

Regarding his cause of action for intentional infliction of emotional distress in Counts 5, Plaintiff believes that Defendants' "continuous and repeated[] discriminatory acts spanning from August 20, 2007 to September of 2008 have collectively contributed to the Plaintiff's current emotional distress," and is therefore not time-barred (*Id.* at 3).  Plaintiff also views Defendants' "affirmative actions to block [him] from economically advancing in the College" from December of 2007 through September of 2008, as a continuing violation.  Moreover, Plaintiff believes

that Defendants' "dissemination of ethnic and religious stereotypes amongst board members in February of 2008" further damaged his reputation so as to hinder him from advancing (*Id*. at 4).  Finally, Plaintiff contests Defendants' assertion that the College's failure to offer him the position of president was but a mere consequential damage from a prior act.  Rather, Plaintiff argues it was the "last unlawful act that contributed to the consequential harm," and therefore believes it tolled the statute of limitations to make Counts 4 and 5 timely (*Id*.).

      **a.**    **Count 5**[3]

In Count 5, Plaintiff pleads a cause of action for intentional infliction of emotional distress against defendants Simpson, Crocker, Drew, Huffman and the College due to their alleged several extreme and outrageous actions (*Id*. at ¶¶ 76-81). Illinois courts have recognized that the continuing violation exception can often apply to intentional infliction of emotional distress claims, especially in the employment context. ***See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 87 (Ill. 2003) (citing *Pavlik v. Kornhaber*, 761 N.E.2d 175 (Ill. App. Ct. 2001)); *see also Hukic v. Aurora Loan Serv.*, 588 F3d 420, 435-36 (7th Cir. 2009) (recognizing that Illinois courts sometime apply the "continuing violation rule," whereby the statute of limitations on a tort that involves a continuing injury does not begin to run until the date of the last injury or last tortious act, but proffering that Illinois courts would not apply exception "to a series of discrete acts, each of which is**

---

[3] Due to the cited case law regarding the continuing tort rule, the Court believes that addressing the Counts out of sequential order provides for a better analysis herein.

**independently actionable, even if those acts form an overall pattern of wrongdoing.") (internal citation omitted)**.

In ***Feltmeier*,** the Illinois Supreme Court quoted the First District for its explanation of why the continuing tort exception should apply to toll the statute of limitations for certain intentional infliction of emotional distress claims:

> Illinois courts have said that in many contexts, including employment, repetition of the behavior may be a critical factor in raising offensive acts to actionably outrageous ones. [Citation.]  It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be. [Citation.]  It would be logically inconsistent to say that each act must be independently actionable while at the same time asserting that often it is the cumulative nature of the acts that give rise to the intentional infliction of emotional distress.  Likewise, we cannot say that cumulative continuous acts may be required to constitute the tort but that prescription runs from the date of the first act. [Citations.]  Because it is impossible to pinpoint the specific moment when enough conduct has occurred to become actionable, the termination of the conduct provides the most sensible place to begin the running of the prescriptive period.

***Id*. (quoting *Pavlik*, 761 N.E.2d at 175) (alteration in original)**.  It also cited the rationale of the Idaho Supreme Court:

> "[T]he definition of intentional infliction of emotional distress requires that there must be a causal connection between the wrongful conduct and the emotional distress, and the emotional distress must be severe. [Citation.]  By its very nature this tort will often involve a series of acts over a period of time, rather than one single act causing severe emotional distress.   For that reason we recognize the concept of continuing tort . . . should be extended to apply in other limited contexts, including particularly intentional infliction of emotional distress.

***Id.*** **(quoting *Curtis v. Firth*, 850 P.2d 749, 755 (Idaho 1993) (alteration in original).**

Here, the Court accepts Plaintiff's argument, for purposes of this motion, that he pled a theory that his intentional infliction of emotional distress claim consisted of a continuous series of allegedly tortious behavior on the part of Defendants. Such is necessary in order to allege such extreme and outrageous behavior, which is the crux of the claim. Therefore, it is alleged actions beginning with the investigation through the refusal to offer Plaintiff the position as president of the College, which constitute Plaintiff's cause of action in Count 5. Thus, the date of the last alleged tortious act, the refusal of the president position, is when the claim accrues for statute of limitations purposes (this allegedly occurred sometime in the summer of 2008). Because the Court must take the well-plead allegations as true and construe them in the light most favorable to Plaintiff, and also because at this juncture, the Court finds Plaintiff's allegations to be plausible, Count 5 is not time-barred, as Plaintiff filed his initial Complaint on November 3, 2008, less than one year after the last alleged tortious act.

**b.     Count 4**

As to Plaintiff's cause of action for interference with a prospective economic advantage as plead in Count 4, Plaintiff alleges that defendants Simpson, Crocker and Drew purposefully interfered with his reasonable expectations of maintaining a "valid business relationship" with the College, which included

promotions, pay raises and being offered the position of president of the College (Doc. 37, ¶¶ 70-75).  Looking to the Amended Complaint, specifically, regarding this "purposeful interference," on the part of defendants Simpson, Crocker and Drew, the Court notes the allegation that Simpson and Crocker "authorized the investigation [of Plaintiff] unilaterally, in violation of the requirements of the Board Policy & Procedures Manual," and that Huffman and Drew led the investigation (*Id*. at ¶ 20).  To recount, the investigation was allegedly conducted in response to the anonymous letter received by the Board.  The investigation was alleged to have begun on August 29, 2007 (*Id*.).  Plaintiff further alleges that Huffman and Drew interrogated him for two hours on October 3, 2007 (*Id*. at ¶ 25).  The Amended Complaint continues, alleging that at an October 16, 2007 Board meeting, Simpson, Crocker and Drew attempted to convince Kern (the College president at the time) to terminate Plaintiff (*Id*. at ¶ 28).  Plaintiff alleges that the decision to remove him from his position as Vice President of Student Services and freeze his salary was finally made on October 19, 2007 (*Id*. at ¶ 34).  Thereafter, sometime in early 2008, Plaintiff includes allegations of further negative sentiment expressed by Board members (*Id*. ¶¶ 42, 43 & 46).  Moreover, Plaintiff alleges that Defendants' failure to correct misapprehensions about him as publicized by local media further compounded the negativity and discrimination against him which ultimately hindered his economic advancement with the College (*Id*. at ¶¶ 37-40).

Because the Court has accepted that the continuing violation exception

applies to Plaintiff's claim in Count 5, it will also construe the allegations of Defendants' behavior as continuous to find that Count 4 is also not time-barred. Accepting the well-pleaded facts as true, the Court finds it plausible that Defendants engaged in a series of acts that tortiously interfered with Plaintiff's chances for being offered the position of president of the College, as well as caused him to be removed as VP of Student Services and have his salary frozen.

### 2. Whether Defendants are Immune for Injuries Resulting From Discretionary Acts

In the alternative, Defendants argue that Counts 4 and 5 should be dismissed because they are entitled to immunity under sections 2-201 and 2-109 of the Local Governmental and Governmental Employees Tort Immunity Act (the "Act"), which provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

**745 ILL. COMP. STAT. 10/2-201**.  Additionally, under Section 2-109 of the Act, the local governmental entity cannot be liable where its employee is not found to be liable.  **745 ILL. COMP. STAT. 10/2-109**.

Defendants argue that all the decisions, including the decision to launch an investigation and to freeze Plaintiff's salary, were made by Board Trustees vested with the authority to determine policy for the College.  Defendants argue that their

conduct as Board Trustees was aligned with their official positions and as such, immunity should shield them from liability, as well as the College (Doc. 47, pp. 7-8).

Responding, Plaintiff counters that immunity only shields those governmental employees acting within the scope of their authority, and will not serve to protect employees who breach a duty imposed independently of state employment (Doc. 53, p. 4, citing *Sitton v. Gibbs*, 392 N.E.2d 244, 247 (Ill. App. Ct. 1979)). Plaintiff points to his Amended Complaint which specifically alleges that Simpson, Crocker and Drew acted outside the scope of their authority and in violation of the Board Policy & Procedures Manual (*Id.* at 5; *see* Doc. 37, ¶¶ 20, 29).

The Court notes that Plaintiff's allegation stating that the Defendants acted "in violation of the requirements of the Board Policy & Procedures Manual," amounts to a legal conclusion rather than a well-pled fact, as Plaintiff failed to plead the specific provision it violated. Nor did Plaintiff attach the provision of the manual to the Complaint. Instead, Plaintiff attempts to correct this deficiency by attaching an excerpt of the Board Policy & Procedures Manual to his Response to now attempt to prove how Defendants acted outside of their authority and violated the Board's procedures (Doc. 53, Ex. 1). This will not suffice as the particularity must be shown in the allegations. For example, a plaintiff cannot merely allege that a defendant breached a contract without including particular allegations about how the contract was breached, what provisions, etc. – even though Rule 8 allows for notice-based pleadings. Such a pleading would only amount to a legal conclusion, which cannot

be considered by the Court in its Rule 12(b)(6) analysis.

Yet, even disregarding these legally conclusive allegations, the Court finds that the remainder of the allegations regarding Defendants' wrongful behavior towards Plaintiff would, if true, be a both a breach of their duty not to tortiously interfere with Plaintiff's prospective economic advantage and not to engage in extreme and outrageous behavior towards Plaintiff. Such duties exist under common law and thus, Defendants should not be shielded by governmental immunity under the Act. Therefore, at the motion to dismiss stage, immunity will not apply to facilitate a dismissal of either Counts 4 or 5 of Plaintiff's Amended Complaint.

### 3.   Whether Plaintiff Need Allege Defendants Took Action Towards a Third Party in Count 4

Defendants alternatively also argue that Plaintiff's cause of action for tortious interference with a prospective economic advantage plead in Count 4 should be dismissed as Plaintiff cannot claim that a corporate employer has interfered with its own business relationship with its own employees (Doc. 47, pp. 8-9). Instead, Defendants assert that Plaintiff's claim fails because the allegations should show tortious interference by Defendants towards a *third party* (*Id*). In response, Plaintiff argues Defendants can be considered a third party to a contract if their actions were unjustified or malicious or outside of the scope of their authority as governmental officials (Doc. 53, pp. 7-8). As Plaintiff suggests, Illinois law holds that a defendant employee and a defendant entity will not be considered the same for purposes of a

claim of tortious interference if that defendant employee acted solely for his or her own gain for solely for the purpose of harming the plaintiff, done without justification or maliciously.  ***See Mittelman v. Witous*, 552 N.E.2d 973, 987 (Ill. 1989), abrogated on other grounds, *Kuwik v. Starmark Star Mktg. Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993)**.

Although Plaintiff's allegations that Defendants acted without justification or authorization (*see* Section III.B.2, *supra*) have only been plead as legal conclusions and therefore, not included in the Court's analysis, there remains enough alleged to plausibly conceive that Defendants acted with malicious intent towards Plaintiff, thereby interfering with his ability to maintain a continuous advantageous business relationship with the College or from advancing further in his career with the College.  Defendants' argument that any alleged wrongful behavior was absolved through means of ratification when the College ultimately decided to remove Plaintiff as VP of Student Services, freeze his salary and not offer him the position of College president is unavailing (Doc. 54, p. 5).  Defendants had the potential to wrongfully influence the College's decisions if their behavior and actions were allegedly malicious.

### 4.    Whether Plaintiff Has Sufficiently Alleged the Necessary Elements of Intentional Infliction of Emotional Distress in Count 5

Defendants' last argument pertaining to Count 5 asserts that Plaintiff has not plead facts to show that their conduct was "extreme and outrageous," which

is a requisite element in proving a cause of action for intentional infliction of emotional distress (Doc. 47, pp. 9-11).  Attempting to strip down the allegations, Defendants proffer that Plaintiff has merely plead that Defendants received an anonymous letter about Plaintiff acting unethically, subsequently investigated the complaint and removed him from one position he held at the College while allowing him to remain in his other Vice President position, froze his salary and did not promote him to President after interviewing him (*Id*. at 10).  As such, Defendants do not believe such allegations rise to the level of what a reasonable person would consider to be "extreme and outrageous" behavior necessary for Plaintiff's claim to survive dismissal.

Responding, Plaintiff contends that his claim has been sufficiently plead pursuant to Rule 8 and also believes Defendants' recitation of his allegations are essentially a mere watered-down version (Doc. 53, pp. 10-12).  Instead, Plaintiff asserts that his allegations show he was the subject of "a viciously motivated investigation and interrogation," and that Defendants thereafter "encouraged public scrutiny, encouraged Plaintiff's colleagues to say they were afraid of him, and demoted him and froze his pay while refusing to give him a reason for the demotion" (*Id*. at 11-12).

The Court finds that in taking the well-pleaded allegations as true and in the light most favorable to Plaintiff, the non-movant, he has sufficiently plead a cause of action, plausible on its face, of intentional infliction of emotional distress.

In sum, it is plausible that the sum of Defendants' alleged actions may appear to a reasonable person as "outrageous and extreme" behavior.  Accordingly, Plaintiff's Count 5 should survive dismissal.

**C.     Defendants' Motion to Strike**

Also included as part of their Motion to Dismiss is a Motion to Strike, whereby Defendants seek to strike (Doc. 47, ¶ 7) paragraphs 16, 17, 18, 19, 21, 23, 33, 35 and 39 from Plaintiff's Amended Complaint.  Defendants move pursuant to Rule 12(f), which allows a party to move for the court to strike from any pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  **FED. R. CIV. P. 12(f)**.  Plaintiff opposes Defendants' Motion to Strike (Doc. 53, pp. 13-15).  Defendants assert as grounds supporting their Motion to Strike that these particular allegations are immaterial, whereas Plaintiff argues there is factual basis for these allegations and that they are central to his theory that the employment decisions and public statements made by Defendants were discriminatory and tortious.  The Court agrees and in its discretion, declines to strike the allegations, finding that they are integral to the theory of Plaintiff's case and therefore, material.

**IV.  <u>Conclusion</u>**

The Court **ACKNOWLEDGES** the Stipulation for Dismissal (Doc. 67), which **DISMISSES WITH PREJUDICE** Counts 2, 4 and 6 against defendant Huffman only.  Further, the Court **DENIES** the partial Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike (Doc. 46), filed by defendants Simpson,

Crocker, Drew and the College.  However, the Court observes Plaintiff's Response agreeing to the dismissal (without stating specific grounds therefor) of Count 6 of his Amended Complaint (Doc. 37).  As such, Count 6 only is hereby **DISMISSED WITH PREJUDICE** in its entirety.

       **IT IS SO ORDERED.**

       Signed this 1st day of February, 2010.

       /s/   David R Herndon

       **Chief Judge**
       **United States District Court**